UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIJAH RAY RICH,

        Plaintiff,

    v.

J. STRATTON, et al.,

        Defendants.

No. 2:17-cv-0432 DB P

ORDER

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's complaint is before the Court for screening. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

Plaintiff has also requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## I.    Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

////

////

////

2

### III. Plaintiff's Allegations

This action is premised on conduct that occurred while plaintiff was housed at California State Prison in Sacramento, California ("CSP-Sac"). Plaintiff names the following individuals as defendants: Sergeant J. Stratton, Sergeant J. Agnone, Correctional Officer ("CO") C. Reynolds, CO D. Bruch, Registered Nurse ("RN") Bonnie Swift, "Psyche-Tech" / Licensed Vocational Nurse ("LVN") C. Okoh, LVN J. Knox, Dr. Be. Hamkar, and Dr. V. Duc.

Plaintiff's allegations may be fairly summarized as follows:

### A. The Assault

On July 18, 2014, plaintiff got into a verbal altercation with CO Reynolds; plaintiff was in restraints at the time. CO Reynolds, CO Bruch, and Sgt. Agnone then brutally assaulted plaintiff, cracking his ribs and jaw, "chok[ing] him out," slamming him into the ground, and jumping on his back. LVN Kaur and Sgt. Stratton witnessed the assault but did not intervene.

In an attempt to cover up the assault, CO Reynolds and CO Bruch claimed that plaintiff committed battery on a peace officer, but the District Attorney's office did not prosecute plaintiff.

At some point before this assault, plaintiff had complained about Sgt. Stratton and CO Reynolds to their respective supervisors about "their misconduct." On July 13, 2014, CO Reynolds informed plaintiff that CO Reynolds did not him.

### B. Medical Care

Plaintiff accuses the medical defendants of conspiring to downplay his injuries and limit his access to care in order to prevent plaintiff from proving that CO Reynolds and CO Bruch assaulted him. In furtherance of this conspiracy, the defendants did the following:

RN Swift, who witnessed the end of the assault, did not provide immediate medical attention. Instead, she referred plaintiff to the TTAC. Plaintiff accuses her of conspiring with Sgt. Stratton.

On July 19, 2014, LVN Okoh conducted a 7219 injury report, but she failed to list all of plaintiff's injuries (his jaw; swollen nose; black eyes; complaints about his ribs, back, neck, and collar bone; and the pain in his chest and wrist).

On July 22, 2014, Dr. Be. Hamkar refused to order an x-ray or an MRI.

On several dates (August 11, September 4, November 18, and November 21, 2014), RN Swift refused to refer plaintiff for an x-ray or an MRI.

Plaintiff wrote informal letters to LVN Knox about his injuries, but she ignored them.

Plaintiff saw RN Swift, LVN Knox, and LVN Okoh five days a week, and he complained during those visits (as well as on medical forms and in letters) of his pain and injuries, but each of these defendants refused to help him get additional help. Plaintiff also alleges that Dr. Vuc "ignored [plaintiff's] situation."

Plaintiff seeks damages and injunctive relief.

## IV. Discussion

### A. Eighth Amendment Excessive Force

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted))

Plaintiff alleges that he was brutally assaulted by CO Reynolds, CO Bruch, and Sgt. Agnone on July 18, 2014. Liberally construing the complaint, this use of force was unnecessary and not in a good-faith effort to maintain or restore discipline considering that the assault immediately followed a verbal altercation with CO Reynolds, plaintiff was handcuffed at the time, and the prosecutor declined to bring charges against plaintiff.

////

These allegations suffice to proceed against these defendants on an Eighth Amendment excessive force claim.

### B.    Eighth Amendment Failure to Protect

A prison official may be liable under 42 U.S.C. § 1983 if he is aware that a fellow officer is violating a prisoner's constitutional rights but fails to intervene. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."); see also Gaudreault v. Municipality of Salem, 923 F.2d, 203, 207 n.3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."). The failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene but failed to do so. Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham, 229 F.3d at 1289; Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

Plaintiff alleges that Sgt. Stratton and LVN Kaur witnessed the assault and, liberally construing the complaint, had a realistic opportunity to intervene but failed to do so. Plaintiff has thus adequately stated an Eighth Amendment failure to protect claim against these two defendants.

However, plaintiff's allegations are insufficient to proceed on this claim against RN Swift, who is alleged to have witnessed only "the end of the force incident," the timing of which does not suggest that she had an opportunity to intervene.

### C.    First Amendment Retaliation

Plaintiff's allegations also support a claim for First Amendment retaliation against Sgt. Stratton and CO Reynolds. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the [detention] context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that [inmate's] protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff claims that prior to the July 18, 2014, assault, he had complained to Sgt. Stratton and CO Reynolds's supervisors about their "misconduct." Shortly thereafter, CO Reynolds (with others) severely assaulted plaintiff while Sgt. Stratton watched.

Because plaintiff's allegations include the requisite five elements for a retaliation claim, he may proceed against these defendants on this claim.

### D. Eighth Amendment Medical Indifference

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." <u>Id.</u> at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating

a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Several of plaintiff's allegations do not state a medical indifference claim. For example, he alleges that RN Swift referred him to the TTAC following the assault instead of providing immediate medical care. This defendant's decision to refer plaintiff, without more, does not suggest deliberate indifference. Similarly, LVN Okoh's failure to include complete details of plaintiff's condition on the 7219 injury report does not state a claim. Plaintiff's claim that RN Swift, LVN Knox, and LVN Okoh repeatedly refused to help him get "medical attention" is too vague and conclusory to even analyze this claim since it is not clear if any medical care was provided at all. Lastly, plaintiff's claim that Dr. Vuc "ignored [his] situation" is insufficient to proceed.

However, assuming to be true the severity of plaintiff's injuries following this assault, Dr. Be. Hamkar and RN Swift's refusal to refer plaintiff for an x-ray or an MRI does suggest deliberate indifference as it shows that they failed to act despite knowledge of a substantial risk of harm. Indeed, plaintiff alleges that his injuries have healed wrong and he is still in pain from not getting properly bandaged.

### E.    Conspiracy

Plaintiff accuses the defendants of conspiring with each other to downplay the severity or nature of the assault to protect the assaulters. A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which result in damage. Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. Id. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. Id. A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. Id. at 856-57. Here, plaintiff's allegation that these defendants "conspired" is not supported by any facts indicating that the defendants reached a "meeting of the minds" with respect to a common objective.

Accordingly, plaintiff fails to state a conspiracy claim against the defendants.

## V.    Motion to Appoint Counsel

Plaintiff has requested the appointment of counsel on the grounds that he is mentally disabled. The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In the present case, the court does not find the required exceptional circumstances. Additionally, plaintiff has

not specified the nature of his mental illness, and in any event the Court finds that he has adequately alleged several viable claims against multiple defendants.

Plaintiff's request for the appointment of counsel will therefore be denied without prejudice to its renewal.

**VI.     Conclusion**

In summary, plaintiff's complaint states the following claims: (1) an Eighth Amendment excessive force claim against CO Reynolds, CO Bruch, and Sgt. Agnone, (2) an Eighth Amendment failure to protect claim against Sgt. Stratton and LVN Kaur, (3) a First Amendment retaliation against Sgt. Stratton and CO Reynolds, and (4) an Eighth Amendment medical indifference against Dr. Be. Hamkar and RN Swift. The remaining claims are not cognizable as plead.

The Court will grant plaintiff the opportunity to file an amended complaint to cure noted defects to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss all claims found not cognizable in this Order, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If plaintiff does not wish to file an amended complaint, and he is agreeable to proceeding only on the claims found to be cognizable, he may file a notice informing the Court that he does not intend to amend, and he is willing to proceed only on his cognizable claim. The undersigned will then recommend that his remaining claims be dismissed.

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no

"buckshot" complaints). Plaintiff should carefully read this screening order and focus his efforts on curing the deficiencies set forth above.

If plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's request for appointment of counsel is denied;

4. The Clerk's Office shall send plaintiff a blank civil rights complaint form;

5. Within thirty (30) days from the date of service of this order, Plaintiff must:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, or

    b. Notify the Court in writing that he does not wish to file an amended complaint and he is willing to proceed on the claims found to be cognizable in this order; or

    c. Notify the Court in writing that he wishes to stand on his complaint as written; and

6. If plaintiff fails to comply with this order, the undersigned may recommend the action be dismissed for failure to obey a court order and failure to prosecute.

Dated: June 3, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/rich0432.scrn